David **WEINBERGER**, on his own behalf and on behalf of all others similarly situated, Appellant,

v.

**RETAIL CREDIT COMPANY**, Appellee.

No. 73–2518.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1974.

Decided May 29, 1974.

See also D.C., 345 F.Supp. 165.

H. Laddie Montague, Jr., Philadelphia, Pa. (David Berger, Joel C. Meredith, Steven J. Greenfogel, Philadelphia, Pa. and Thomas D. Broadwater, Columbia, S. C., on brief), for appellant.

Walter R. Milbourne, Philadelphia, Pa. (Douglas McKay, Jr., Columbia, S. C., and Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa. and Robert W. Biccum, Atlanta, Ga., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

In December 1971, 14 years after the events of which he complained, appellant David Weinberger filed a two-count complaint in the United States District Court for the Eastern District of Pennsylvania. In Count I it was alleged that Retail Credit Company and International Business Machines Corporation had conspired with each other "to interfere with [Weinberger's] potential business and employment relationship" with IBM by the use of a preemployment investigative report. This report, Weinberger contended, contained substantial misinformation which was the sole reason he was denied employment with IBM.

The second count alleged that Retail Credit (RCC) had violated section 2 of the Sherman Act, 15 U.S.C. § 2, by monopolization of, or an attempt to monopolize, the national credit reporting market. Weinberger sought treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, for himself and injunctive relief under section 16, 15 U.S.C. § 26, on behalf of himself and a similar class of persons.

In response IBM filed a motion to dismiss Count I based on the applicable statutes of limitations, and RCC sought a change of venue and summary judgment as to both counts. Weinberger then attempted to amend his complaint so as to drop Count I. In June 1972 the case was transferred to the United States District Court for the District of South Carolina, and IBM, by stipulation with the appellant, was dismissed as a party defendant. The two remaining parties renewed their motions before that court.

Preliminarily, Judge Hemphill denied summary judgment and gave Weinberger leave to amend, but he withdrew that order two days later (February 17, 1973). On October 25, 1973, he denied Weinberger leave to amend and granted summary judgment for RCC on both counts. Interpreting appellant's Count I allegations as stating, alternatively, claims for invasion of privacy, malicious interference with contractual relations and conspiracy, he found that the applicable statutes of limitations under South Carolina law had run as to each theory. Additionally, the decision was rested on the independent grounds of conditional privilege, *see* Cullum v. Dun & Bradstreet, Inc., 228 S.C. 384, 90 S.E.2d 370 (1955), and failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). The district judge also found that summary judgment was proper upon Count II due to Weinberger's lack of standing under sections 4 and 16 of the Clayton Act. We affirm the decision as to Count I on the first ground advanced by the district court. As to Count II, we hold that the

complaint did not allege a sufficient basis for a finding of fraudulent concealment and that the claim for relief under sections 4 and 16 of the Clayton Act are consequently barred by section 4B, 15 U.S.C. § 15b.

## I.

■■ Unrebutted affidavits submitted by RCC tend to establish that Weinberger knew RCC had prepared an investigative report concerning him, that a copy was furnished to IBM, and that IBM used that report in evaluating Weinberger for employment. Further, they demonstrate, through Weinberger's letter to RCC and IBM personnel, that he obtained a copy of the report[1] and was successful (though not completely to his satisfaction) in convincing RCC that the report was inaccurate and that a new report should be prepared. Finally, it seems beyond peradventure that Weinberger had direct knowledge of RCC's requirement of confidentiality of the reports, since he had to sign a "release" in order to obtain a disclosure of the contents of the report.[2] Denied employment in August 1957, Weinberger had full knowledge by September of the next year of the contents of the report which allegedly was the sole reason for his failure to be hired. Yet no complaint was filed until December 1971. Any conceivable basis of recovery under South Carolina law is barred by the several statutes of limitations.[3] Appellant's recitation of the litany of fraudulent concealment, in light of the knowledge which he possessed in 1958, is unavailing. "The mere fact that the report was intended for private use does not constitute fraudulent concealment." Atwell v. Retail Credit Co., 431 F.2d 1008, 1010 (4th Cir. 1970), cert. denied, 401 U.S. 1009, 91 S.Ct. 1251, 28 L.Ed.2d 544 (1971); Peacock v. Retail Credit Co., 429 F.2d 31 (5th Cir. 1970), cert. denied, 401 U.S. 938, 91 S.Ct. 927, 28 L.Ed.2d 217 (1971). The district court did not abuse its discretion in declining to allow amendment to the complaint so as to delete Count I[4] and likewise prop-

1. In a letter to W. C. Stiefel, IBM's branch manager in Columbia, South Carolina, (who interviewed Weinberger for possible employment) Weinberger wrote: "At hand I have a copy of a 'confidential credit report' drawn on myself by a firm in Charleston, South Carolina, which I have sought to obtain for some time." He went on to list the inaccuracies in the report. Letter to W. C. Stiefel, June 28, 1958, Exhibit B of Stiefel affidavit.

2. Weinberger wrote Stiefel on September 2, 1958:
 Through the procedure of releasing the Retail Credit Company from all legal liability, I have had a copy of the report which they drew on me and submitted to IBM in mid-1957 (as it related to my application for reemployment at the time) presented to me for review.
 Exhibit C of Stiefel affidavit.

3. Invasion of privacy, malicious interference with contractual relations, and conspiracy each have six-year limitation periods. Code of Laws of South Carolina § 10-143 (1962). Libel carries a two-year limitation. Code of Laws of South Carolina § 10-145 (1962).

4. While we are certainly aware that Fed.R. Civ.P. 15(a) requires that leave to amend shall be "freely given when justice so requires," Foman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), we also recognize that the function of Rule 15(a) is generally "to enable a party to assert matters that were overlooked or were unknown to him at the time he interposed his original complaint or answer." C. Wright and A. Miller, 6 Federal Practice and Procedure: Civil § 1473, at 375 (1969). A responsive pleading having been filed, appellant cannot amend "as a matter of course." Appellant here does not seek leave to amend in order to correct an insufficiently stated claim but rather, as the district judge recognized, "to drop Count I of the original complaint *without prejudice*." (Emphasis added). While it is true that allowing the amendment would have narrowed and perhaps clarified the issues before the court, it is also true that prejudice would result to appellee if the motion were allowed. Dismissal without prejudice—the actual effect of such an amendment—would have left him free to assert such claims again, putting RCC to the expense of relitigation. Though we do not impugn Weinberger's motive in seeking to amend, we believe the district judge properly exercised his discretion in denying the motion because of "undue prejudice to the opposing party . . . ." *Foman, supra*, 371 U.S. at 182.

erly granted summary judgment based upon the statutes of limitations.

## II.

In its answer to Weinberger's complaint, RCC asserted that Count II (as well as Count I) was barred by the statute of limitations. Section 4B of the Clayton Act, 15 U.S.C. § 15b.[5] Over 14 years having elapsed between Weinberger's attempt to gain employment with IBM and the commencement of this action, the complaint sought to anticipate RCC's affirmative defense that the action was barred by alleging fraudulent concealment. Paragraph 37 of Count II stated:

> Plaintiff had no knowledge of the monopolization or attempt to monopolize by defendant, or of the facts which might have led to the discovery thereof until recently. Plaintiff could not have discovered the antitrust violations alleged herein at an earlier date by the exercise of due diligence because of deceptive practices and techniques of secrecy employed by defendant to avoid detection and to fraudulently conceal its activities attempting to monopolize the investigative reporting field.

In light of affidavits submitted by RCC and unrefuted by Weinberger, we find this allegation insufficient.

 It is now rather firmly established that the federal doctrine of fraudulent concealment—that the relevant statute of limitations does not commence running until the fraud "is discovered by, or becomes known to, the party suing," Bailey v. Glover, 88 U.S. 342, 349–350, 21 Wall. 342, 22 L.Ed. 636 (1874)—applies in order to toll section 4B of the Clayton Act. See, e. g., Atlantic City Electric Co. v. General Electric

Co., 207 F.Supp. 613, aff'd, 312 F.2d 236 (2d Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963); General Electric Co. v. City of San Antonio, 334 F.2d 480 (5th Cir. 1964). But merely intoning the word "fraudulently" in a complaint is not sufficient to raise the defense. In the first case to apply the doctrine in the context of the Clayton Act, Judge Friendly, in refusing leave to amend an insufficient plea of fraudulent concealment, reasoned:

> Even under modern liberal rules of pleading "justice" still requires that a plaintiff seeking to escape the statute in such a case shall make "distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been before made." Stearns v. Page, 1849, 7 How. 819, 829, 12 L.Ed. 928.

Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 88 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed. 2d 26 (1961). Thus three elements are necessary: (1) Fraudulent concealment by the party raising the statute together with (2) the other party's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part.

 We interpret Weinberger's statement that RCC's concealment was not discovered until "recently" as relating back to his fraudulent concealment allegation under Count I. There discovery was said to occur at the time of hearings before the House of Representatives' Subcommittee on Invasion of Privacy in May 1968. What it is that Weinberger discovered is said to be RCC's "anti-trust violations," a refer-

---

5. Section 4B determines, in part, that:
 Any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued.

ence, as we construe it, to the acts of monopolization or attempted monopolization set out earlier in the complaint. Reference to these acts, in light of Weinberger's knowledge as shown by appellee's affidavits, leaves almost nothing for Weinberger to have discovered in 1968. He knew, assuming the truth of his statement about RCC's conduct with respect to him and the inaccuracy of its report issued about him, that (1) RCC invaded the privacy of persons on whom it drew reports, (2) RCC carried on investigatory activity which deceived the business community and the public, (3) RCC published reports about individuals without full knowledge and that at least one report was false, misleading and defamatory, (4) RCC had a practice of keeping those reports "strictly confidential," and (5) RCC refused to make its reports available to subjects of the reports unless a release was signed. In short, while RCC may have concealed its alleged monopolistic position from numerous persons during this period, its "deceptive practices and techniques of secrecy" effectively concealed very little from Weinberger. He knew he had been injured, who was responsible, how the injury occurred, and the methods utilized to prevent him from discovering the injury. And yet he chose to institute no legal proceedings until 14 years later. Without regard to Weinberger's standing to sue under sections 4 and 16 of the Clayton Act, the district judge should have found his claim barred by section 4B. *See* Moviecolor Limited v. Eastman Kodak Co., 288 F.2d 80, 87–88 (2d Cir.), cert. denied, 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). Furthermore, being barred from suit himself, Weinberger is not a member of the class he seeks to represent under section 16 and thus does not fulfill the first prerequisite of Fed.R.Civ.P. 23(a).

Because both counts are barred by the pertinent statutes of limitation, the judgment for defendant will be

Affirmed.