Denise MINTER, et al.

v.

WELLS FARGO BANK, N.A., et al.

Bradley Petry, et al.

v.

Prosperity Mortgage Co., et al.

Civil Nos. WMN–07–3442,
WMN–08–1642.

United States District Court,
D. Maryland.

Dec. 16, 2009.

---

Richard S. Gordon, Quinn Gordon and Wolf Chtd., Towson, MD, Benjamin Howard Carney, Quinn Gordon and Wolf Chtd., Cyril Vincent Smith, III, William K. Meyer, Zuckerman Spaeder LLP, Baltimore, MD, for Plaintiffs.

Brian M. Forbes, Irene Claire Freidel, K and L Gates LLP, Boston, MA, Brian W. Stolarz, David T. Case, K and L Gates LLP, Jay N. Varon, Melinda F. Levitt, Wendy K. Arends, Foley and Lardner LLP, Soyong Cho, Thomas M. Hefferon, David L. Permut, Goodwin Procter LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

SUSAN K. GAUVEY, United States Magistrate Judge.

Before the Court are Plaintiffs' Motion to Compel Production of Documents from Defendant Prosperity Mortgage Company (Discovery Motion # 1; Paper No. 108); Plaintiffs' Motion to Compel Production of Loan Files and for a Protective Order (Discovery Motion # 2; Paper No. 111); and Plaintiffs' Motion to Compel Production of Documents from Defendants Wells Fargo Bank, N.A. and Wells Fargo Ventures, LLC (Discovery Motion # 4; Paper No. 139). A hearing was held on December 1, 2009. For the following reasons, and as set forth in the Court's December 2, 2009 Order, the Court grants in part and denies in part Plaintiffs' Discovery Motion # 1, denies Plaintiffs' Discovery Motion # 4, and grants Plaintiffs' Discovery Motion # 2.

## BACKGROUND

The *Minter* and *Petry* cases share similar factual bases, and have the same defendants. *Minter* plaintiffs allege that Wells Fargo, in conjunction with Long & Foster Real Estate, Inc., created Prosperity Mortgage—a sham Affiliated Business Arrangement ("ABA")—to facilitate collection of unlawful referral fees and kickbacks. (Paper No. 135, 3). According to plaintiffs, Prosperity is not a mortgage company, but rather a "conduit" through which Long & Foster receives kickbacks for referring mortgages from Wells Fargo. (*Id.*). Unsuspecting borrowers essentially pay the referral fee disguised as legitimate charges, for which they receive no additional goods or services-a practice plaintiffs assert violates state and federal laws. (*Id.*). *Petry* plaintiffs allege that defendants acted as both a mortgage broker and a lender and, in doing so, unlawfully collected "finder's fees" for originated loans. (Paper No. 135, 3); MD.CODE ANN., COMM'L LAW § 12–807.

Although plaintiffs in the two cases raise different legal claims (*Minter* plaintiffs raise claims under RICO and RESPA, while *Petry* plaintiffs bring claims under the Maryland Finder's Fee Act), plaintiffs suggest that discovery in the two cases would be duplicative and thus have conducted discovery only in *Minter*. (Paper No. 135, 3). Defendants do not concede to a complete overlap in relevant discovery, highlighting the differences in claims in each case against Long & Foster defendants and Walker Jackson Mortgage Company (Paper No. 137, 2–3) and the differences in conduct relevant to each case (Paper No. 136, 2 n. 2). However, the

documents at issue here are requested only from Prosperity and Wells Fargo defendants and the information sought is equally relevant to claims in both cases, as it involves defendants' relationships and the fees paid between them.

## DISCUSSION

### A. *Motions to Compel Document Production*

As a threshold matter, the parties dispute the time period for which plaintiffs are entitled to discovery. Plaintiffs request documents dating back to Prosperity's inception in 1993 on the basis of equitable tolling (Paper No. 108–4, 5–16; Paper No. 119, 4–5), while defendants respond that discovery should be limited to the longest statutory period applicable in this case and that equitable tolling cannot extend that limitation (Paper No. 108–3, 15; Paper No. 113, 13; Paper No. 114, 3–4).[1]

██ Prosperity claims that equitable tolling is not available for claims brought under RESPA on the basis of the Fourth Circuit's unpublished 1989 opinion, *Zaremski v. Keystone Title Assoc., Inc.*, 884 F.2d 1391, which followed the D.C. Circuit's determination that RESPA's one-year statute of limitations was jurisdictional and therefore not subject to equitable tolling, *id.*, *1 (*citing Hardin v. City Title & Escrow Co.*, 797 F.2d 1037 (D.C.Cir.1986)). Not only is *Zaremski* unpublished, however, but the holding for which Prosperity

cites it is also sparsely reasoned. *Id.* (noting simply that it was "not persuaded to disagree with the D.C. Circuit's reasoning in *Hardin* "). The Fourth Circuit has not revisited this issue, and no circuit other than the District of Columbia that has cited *Zaremski* or *Hardin* on the issue of equitable tolling has done so with approval, and most with express disapproval. *See Salois v. Dime Sav. Bank of N.Y., FSB*, 128 F.3d 20, 25 n. 3 (1st Cir.1997) (noting that *Hardin* came from the only court of appeals to hold that RESPA was not subject to equitable tolling, and declining to address the correctness of that ruling); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 503 (3rd Cir.1998) (rejecting the *Hardin* view on equitable tolling in a TILA claim); *Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157, 1166–67 (7th Cir.1997) (declining to follow *Hardin* in light of its inconsistency with other circuits' decisions regarding equitable tolling under TILA, as well as the Supreme Court's *Irwin* decision); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 n. 2 (11th Cir.1998) (noting that *Hardin*'s equitable tolling discussion relied in incorrect assumptions regarding legislative history). *See also Kerby v. Mortgage Funding Corp.*, 992 F.Supp. 787, 797 (D.Md. 1998) (noting that *Zaremski* did "not suggest the kind of analysis the Fourth Circuit would have had it intended to bind the lower courts," and rejecting and extensively criticizing *Hardin*'s reasoning). For the reasons articulated in *Kerby*,[2] this

---

1. If the Court does find equitable tolling applicable in this case, Prosperity suggests that it follow *Pedraza v. United Guaranty Corp.*, 114 F.Supp.2d 1347 (S.D.Ga.2000), essentially replacing the one-year statute of limitations for private claims under RESPA with the three-year statutory period provided for public claims. (Paper No. 108–3, 15). Neither *Pedraza* 's holding nor its logic has been adopted by any other court and, certainly, this Court is not bound by it.

2. *Kerby* articulated its disagreement with *Hardin*, declining to follow *Zaremski*, on the basis of *Hardin* 's

> citation to inapposite case law addressing sovereign immunity, which actually tends to support rather than undermine the case for equitable tolling under RESPA and TILA; its extraction of congressional intent by examining which part of which sentence the time limitations are contained while ignoring express congressional purpose in the plain text of the Acts; its apparent as-

Court follows the clear majority of circuits and concludes that equitable tolling is available under RESPA and therefore may effectively extend the statutory period in *Minter*.[3]

■ Although plaintiffs do not advance an equitable tolling argument in *Petry*,[4] the Court similarly finds that the *Petry* claims are subject to equitable tolling. MD.CODE ANN., CTS. & JUD. PROC. § 5–203 (providing for equitable tolling of a statute where a plaintiff's ability to discover his injury was obstructed by the adverse party's fraud); *Miller v. Pac. Shore Funding*, 224 F.Supp.2d 977, 987 (D.Md.2002) (applying Maryland law in finding that "when a defendant's 'stealth [or] subterfuge' leaves a plaintiff 'blamelessly ignorant' of the facts and circumstances entitling him or her to relief, [§ 5–203] prevents the limitations clock from running until the plaintiff has learned or should have learned of the fraud").

■ The fact that plaintiffs seek class certification also does not preclude equitable tolling. Certainly, the Fourth Circuit routinely denies equitable tolling in pre-certification class actions where determination of most claims would turn on facts peculiar to the individual claims. *See, e.g., Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311, 323–24 (4th Cir.2006) ("finding that equitable tolling could not be resolved on a class-wide basis where applicability of equitable tolling would depend on an examination of the particular circumstances of each individual class member"); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir.2002) (declining to certify a class that included plaintiffs whose claims were time-barred as well as claims that were not time-barred); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir.1998) (finding that "difference[s] in right" precluded class certification where claims depended on individual showings that were "non-typical and unique to each franchisee"); *Lukenas v. Bryce's Moun-*

sumption that courts prior to the 1980 TILA amendment uniformly followed the supposed general rule on recoupment when in fact they were split; its disregarding of well-settled federal principles of equitable tolling as elucidated repeatedly by the Supreme Court; and its application of a 'jurisdictional' statutory canon both before and in the service of determining whether the limitations periods are in fact, as it framed the issue, 'jurisdictional.'
*Id.* at 797.

3. At the December 1, 2009 motions hearing, counsel for Prosperity referred the Court to *Phrasavang v. Deutsche Bank*, Civ. No. 09–64, 2009 WL 3047320 (D.D.C. Sept. 23, 2009) (publication forthcoming), which unsurprisingly followed the D.C. Circuit's *Hardin* opinion. *Phrasavang* does not persuade this Court to reach a different conclusion.

4. Plaintiffs instead rely on extension of Maryland's 12–year "specialty" statute of limitations to Maryland's Finder's Fee Act, which would entitle plaintiffs to discovery back to

December 1995. (Paper No. 136, 3 (*citing Master Fin., Inc. v. Crowder*, 409 Md. 51, 972 A.2d 864 (2009))). The Court of Appeals of Maryland recently articulated that the specialty statute should apply where "(1) the duties, obligations, prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by prohibitions, and rights sought to be enforced by the plaintiffs are created and imposed solely by [statute], (2) the remedy pursued … is authorized solely by [statute], and (3) the ascertainment of those amounts is readily ascertainable." *Id.* at 72, 972 A.2d at 876. The Maryland Finder's Fee Act meets these requirements: application of this extended statute of limitations is not precluded by plaintiffs' pursuit of additional claims, *Crowder*, 972 A.2d at 868, 872, a statutory remedy that is heightened from that available at common law is sufficiently statutory to justify application of the specialty statute, *id.*, 409 Md. at 72, 972 A.2d at 876, and damages under the Finder's Fee Act are certainly readily ascertainable, with the alternative liquidated, fixed remedy of $500 per transaction, *Id.*

*tain Resort, Inc.*, 538 F.2d 594, 597–98 (4th Cir.1976) (denying class certification where a determination of whether the statute was equitably tolled "would turn on facts peculiar" to plaintiffs' individual claims). However, equitable tolling is not always inappropriate in the context of a class action. *Lukenas*, 538 F.2d at 597 (highlighting the "considerable difference in rights, so far as tolling the statute is concerned between a lot purchaser who relies on the bare failure to file a Statement of Record ... and one who plants his rights on a false or fraudulent statement in the "Property Report" furnished him under the Act," and commenting that in the latter case, equitable tolling may be easier to establish on a class-wide basis). In fact, application of equitable tolling is particularly appropriate at this stage in class action litigation to allow the Court to determine the scope of the class. *Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 485–86 (D.Md. 2009) (applying equitable tolling to a RESPA class action case and commenting that application of equitable tolling at this early stage was particularly appropriate).

■■ *Minter* and *Petry* plaintiffs adequately pled equitable tolling in their complaints. Certainly, "merely intoning the word 'fraudulently' in a complaint is not sufficient" to raise the defense of equitable tolling. *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir.1974). Rather, "a plaintiff seeking to escape the statute in such a case shall make 'distinct averments as to the time when the fraud, mistake, concealment or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether by the exercise of ordinary diligence, the discovery might not have been made.'" *Id.* (quoting *Stearns v. Page*, 48 U.S. 819, 822, 7 How. 819, 12 L.Ed. 928 (1849)). *See also Supermarket of Marlinton, Inc. v. Meadow Gold Dairies*, 71 F.3d 119, 122 (4th Cir.1995) (requiring that, to invoke equitable tolling, a plaintiff must demonstrate that "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence"). A plaintiff may satisfy the due diligence element without demonstrating that it engaged in any specific inquiry into that which was concealed by instead establishing that it was not aware of facts that should have provoked its inquiry. *Meadow Gold Dairies*, 71 F.3d at 126, 128. Thus, equitable tolling may be adequately pled where a complaint alleges that disbursements were not made in accordance with statements provided to plaintiffs, that documents were not properly recorded, and plaintiffs were reasonably unaware of any departure from what was represented to them. *Proctor*, 645 F.Supp.2d at 486–87.

■ Here, plaintiffs' claims, as articulated in their complaints, stem from defendants' use of "a uniform and consistent protocol" and their ongoing conduct in each transaction since Prosperity's inception under which plaintiffs and members of the putative class were uniformly and consistently deceived into paying unlawful fees to Prosperity. (*Minter* Complaint, Paper No. 18, 7–21; *Petry* Complaint, Paper No. 1, 8–15).

■ Therefore, having found that equitable tolling is both available and has been adequately pled, the Court concludes that plaintiffs are entitled to discovery of documents throughout the entire putative class period, dating back to and including Prosperity's 1993 inception.

The parties further contest specific document requests: Prosperity Request Nos. 5, 8, 9, 15, 17, 23, and 25, and Wells Fargo Request Nos. 4 and 7.

■ As to plaintiffs' request for Prosperity's federal and state tax returns (Prosperity Request No. 5), Prosperity fails to support its contention that tax returns are confidential documents that require a compelling reason for production. (*See* Paper No. 108–3, 19). It is well-settled that corporate tax returns are not privileged by statute or at common law, *e.g.*, 26 U.S.C. § 6103 note (noting that the 26 U.S.C. § 6103 privilege is limited to prohibition of disclosures by government officers and does not prevent a court from requiring a taxpayer to disclose tax returns in discovery); MD.CODE ANN., TAX-GEN. § 13–202 note (commenting that "Federal and State tax returns are not privileged, and, provided they are relevant, they are discoverable"); MUELLER & KIRKPATRICK, FEDERAL EVIDENCE § 5:5 (recognizing that tax returns are not privileged, but that courts should order discovery of them only under a protective order where clearly relevant), and the protective order already in place in this case is adequate to protect any confidential information produced. Plaintiffs have articulated that schedules contained in Prosperity's tax returns include information relevant to the HUD elements, which are central to this case, and are thus discoverable. Therefore, plaintiffs are entitled to all federal and state tax returns filed by Prosperity and not limited to Maryland, contingent on the parties' agreement as to nonproduction of any clearly irrelevant schedules and subject to the existing protective order.

■ As to plaintiffs' request for documents regarding Prosperity's warehouse lines of credit (Prosperity Request No. 9), Prosperity has already provided the Master Agreement establishing its warehouse lines of credit, but plaintiffs requested documents showing when those lines of credit were used and agreed to limit their requests to only documentation relevant to the 200 sample loan files. Plaintiffs allege that this documentation will show to what extent defendants' actions varied from the practices established in the Master Agreement, and will show when and where transfers were made. Therefore, as this information appears reasonably calculated to lead to the discovery of relevant information, plaintiffs are entitled to discovery from Prosperity of the documents requested pertaining to the warehouse lines of credit as requested for the 200 sample loan files.

As to plaintiffs' requests for memos prepared by or for Prosperity by or for Long & Foster, Wells Fargo, and/or Walker Jackson and for documents containing analyses of Prosperity's financial performance (Prosperity Request Nos. 23 & 25), the parties have agreed to confer in an attempt to resolve the scope of these requests. Plaintiffs are therefore entitled to discovery of the documents requested under Request Nos. 23 and 25 subject to the parties' agreement as to the reasonable scope of those requests.

■ Plaintiffs request all documents submitted to or received from any state or federal agency, including annual reports and documents concerning any state or federal licensure (Prosperity Request Nos. 8, 15, & 17; Wells Fargo Request Nos. 4 & 7). Plaintiffs suggest that these documents are likely to establish or infer that Wells Fargo exercised control over Prosperity and its regulatory filings during the relevant period. However, defendants openly admit that Wells Fargo handled regulatory matters for Prosperity and have provided in discovery a copy of an agreement that establishes this fact. Therefore, as the documents requested are not reasonably calculated to lead to the discovery of relevant evidence and, at best, would result in cumulative or duplicative evidence, plaintiffs are not entitled to filings made by Prosperity or Wells Fargo with state or regulatory agencies to the

extent those documents are not otherwise produced.

### B. *Motion to Compel Production of Loan Files*

Originally, plaintiffs sought production of all loan files (Paper No. 111–2, Ex. A, Document Request 1). After extended negotiation, parties agreed to a random sample of 200 loan files covering the entire period of 1993 to the present. (*Id.*, 8 & Ex. H). Prosperity then produced a sample of 100 loan files covering the period of 2003 to the present. (Paper No. 148, 1–2). On the basis of the Court's finding that the relevant discovery period extends back to 1993, defendants shall now provide to plaintiffs an additional 100 loan files covering the period of 1993 through 2003 in accordance with the parties' agreed-upon random sampling methods and agreed-upon content.

 Although defendants Prosperity and Wells Fargo do not dispute that the loan sample is representative of all loan files,[5] defendants argue that *they* should not be limited to reliance on the loan sample during the class certification period, and should instead be able to use all loan files, including those not provided to plaintiffs in discovery, in defending this stage of the litigation. This position is fundamentally unfair, especially in light of defendants' denial of complete access to all loan files to plaintiffs. Given the random nature of the loan file sample selection and its representative character, plaintiffs and defendants should be equally capable of supporting their positions on the basis of that sample. Limitation of precertification discovery of loan files to a limited sample is an excellent, mutually beneficial cost-saving approach. *See* Manual for Complex Litigation, Fourth § 21.14 (approving of sampling in the context of class-related

discovery to the extent it "provides a meaningful, or at least objective, sample of data"). Therefore, plaintiffs and defendants shall be equally limited to only the loan file sample for purposes of class certification.

### CONCLUSION

As set forth in the Court's December 2, 2009 Order, the Court GRANTS in part and DENIES in part Plaintiffs' Discovery Motion # 1: To Compel Production of Documents from Defendant Prosperity Mortgage (Paper No. 108), DENIES Plaintiffs' Discovery Motion # 4: To Compel Production of Documents from Defendants Wells Fargo Bank, N.A. and Wells Fargo Ventures, LLC (Paper No. 139), and GRANTS Plaintiffs' Discovery Motion # 2: To Compel Production of Loan Files and for a Protective Order (Paper No. 111).

---

**5.** At the December 1, 2009 motions hearing, counsel for defendants Prosperity and Wells

Fargo expressly declined to dispute that the sample of 200 loan files was representative.