JOSEPH D. ROPER *et al.*

*v.*

THE TRUSTEES OF SANGAMON LODGE No. 6, I. O. O. F.

1. FRAUD—*by failure to give information.* There is no fraud in failing to give information to another of a fact of which he is ignorant, when the information is as accessible to one person as to the other. One person is not required to act as the agent of another when the latter, by reasonable diligence, may acquire the information necessary to protect himself.

2. SAME—*by payee in neglecting to inform surety.* If a person, knowing another to be utterly insolvent, proposes to credit him if he will procure sureties, he can not be held guilty of a fraud by failing to apprise the surety of the insolvency of his principal; but if the person giving the credit makes use of any artifice to throw the surety off his guard and lull him into a false security, and he is thereby deceived, this will amount to a fraud.

3. Where a party becomes surety upon the bond of a treasurer of a secret society, for the faithful application of moneys in his hands, payable to the society, the fact that the officers and members of the society knew of his previous mis-appropriations of the funds entrusted to him during the prior year, and with such knowledge re-elected him, and failed to communicate such fact to his sureties, no inquiry being made of them by the sureties, and they doing no act to put the sureties off their guard or preventing them from ascertaining the facts, no fraud can be imputed to the society which can be set up in avoidance of the sureties' liability on the bond.

4. SURETY—*when can not show defalcation of officer occurred in previous term.* Where an officer is re-elected and becomes his own successor, and at the com-

mencement of his second term reports a certain sum in his hands, and gives bond with sureties to account for and pay over the moneys coming to his hands during the term, his sureties, when sued, will be responsible for the sum so reported in his hands, and will not be allowed to show that the defalcation, in fact, occurred during the previous term, and throw the liability on his sureties for that term.

APPEAL from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Messrs. ROBINSON, KNAPP & SHUTT, for the appellants.

Messrs. PALMER, PALMER & ROSS, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears that John A. Hughes was elected treasurer of appellees' lodge. He so acted from the first day of January, 1875, until the 30th of June following. It is agreed by the parties that at the commencement of this term of office he reported to the lodge that he had the sum of $436, money of the lodge; that on the 30th of June, the end of his term, he should have had in his hands $561, which he had received and failed to pay over to his successor. The suit was on the bond given by Hughes, as such treasurer, and service was had on the sureties but not on Hughes.

The sureties pleaded *non est factum*, and a special plea, that for two terms preceding the term commencing on the 1st of January, 1875, Hughes, the principal, was treasurer, and, at that time, was a defaulter to the lodge for moneys previously received and misapplied; that it was then known to the officers and members of the lodge that he was a defaulter, and the sureties were ignorant of the fact; that the lodge is a secret organization, of which defendants were not members, and were ignorant of its business; that it was the duty of the officers and members of the lodge, when the bond was executed, to inform defendants that Hughes was a defaulter, and defendants were misled by the lodge having re-elected him, and thereby induced them to believe he had acted faithfully, but the offi-

cers or members gave to defendants no such notice. The plea concludes by insisting the bond is void. The court sustained a demurrer to this plea, and that decision is assigned for error.

It is also urged, that the court erred in refusing to permit appellants to prove that the default accrued and the mis-appropriation of the money was during the term previous to this election on the first of January, 1875, when other persons were his sureties, for the purpose of fixing the liability for the default on the sureties on the bond covering the previous term.

It is urged that the special plea presented a complete defence to the action; that the officers and members of the lodge, knowing of the defalcation, and re-electing Hughes treasurer, operated as a recommendation of his honesty to all persons not members of the lodge; that such conduct on the part of the lodge was calculated to and did mislead appellants and operated as a fraud upon them, and the concealment by the officers and members of the fact that Hughes was a defaulter when they signed his bond, was a positive fraud.

There is a class of cases in which it is held that it is fraud to fail to disclose defects on the sale of property, and silently stand by and permit another to act upon the supposition that he is purchasing a good title, when the person claiming an adverse title or interest, knowing the fact and having the opportunity, fails to assert his claim. So, of many other transactions it is held to be a fraud to fail to disclose facts that would prevent the other party from acting. But the rule does not apply when the defect or important information is as accessible to one person as the other. One person is not required to act as the agent of another when the latter, by reasonable diligence, may acquire the information.

If a person knowing another to be utterly insolvent, proposed to credit him if he would procure sureties, he can not be held to have acted in bad faith by failing to apprise the surety that his principal is utterly insolvent. We presume no one would regard such a failure to apprise the surety of the fact of the insolvency of the principal, as a fraud, and yet had the surety

known the fact, he would probably not have indorsed for the principal. And this is held not to be a fraud, because it was the folly of the surety not to have learned the financial standing of the principal. The avenues of information were open to him, and it was his duty to have used the means to inform himself, and failing to do so, he must suffer the consequences of his inaction. In such a case, however, if the person extending the credit were to use any artifice to throw the surety off of his guard and to lull him into a false security, and he was thereby deceived, that would amount to a fraud. But mere failure to communicate the fact in such a case does not amount to bad faith.

In this case, it is urged, that, as this was a secret organization, information as to Hughes' integrity was not accessible to appellants, as they were not members of the order. We apprehend that Hughes' account books were not under the seal of secrecy. If appellants had requested, he could, if disposed, have shown his books to them. Or had they inquired of the officers of the lodge, or even of its members, they would, if within their knowledge, have been required to communicate correct information. It is thus apparent that the sources of information were open to appellants had they been disposed to pursue them. But the officers and members were asked nothing, nor did they say anything, and we can not hold they were guilty of a fraud.

It is likewise urged, that the court should have admitted evidence to prove that the defalcation occurred the term before appellants became sureties on this bond, and thus show that the sureties on his bond for the preceding term were liable. In the case of *Morley* v. *Town of Metamora*, 78 Ill. 395, the same defence was interposed. In that case, as in this, the supervisor was his own successor and his sureties interposed the same defence, but it was held not to be good. In that case it was said, " It is not made to appear very clearly that whatever default occurred, took place in the first year the supervisor was in office; but conceding that fact, we do not think

it relieves the sureties on the bond upon which this action is brought, from liability. The supervisor was his own successor in office. He had made his annual report, in which he charged himself with having a certain amount of money in his hands. The report was approved, and we must presume it was true. * * * In contemplation of law, the money mentioned in his report was in the hands of the supervisor, and the undertaking of the sureties on his bond was that he should account for it. It was as much his duty to account for whatever funds were in his hands at the end of the first year, as it was to account for whatever should be received during the second year. The law made the sureties responsible for any default in that regard. There could be no action maintained against the sureties on the first bond at the expiration of that year, for there was no one who could make demand for the money the supervisor reported as having in his hands, so as to establish a default." And the case of *Pinkstaff* v. *The People,* 59 Ill. 148, is referred to as sustaining the decision in that case.

We think the case of *Morley* v. *Metamora, supra,* is decisive of this question. We are unable to distinguish this from that in any essential particular. Appellants undertook that Hughes should account for and pay the money, on orders from proper authority, when required, and this he failed to do, and appellants must make his default good.

We perceive no error in the record and the judgment must be affirmed.

*Judgment affirmed.*