WILMINGTON, COLUMBIA AND AUGUSTA R. R. CO. v. LING.

1. In action by a railroad company against the sureties on the bond of a station agent, who was in arrears to the company when the bond was executed, and continued to make additional defaults in several subsequent monthly settlements, the presiding judge committed no error in charging the jury "that if the plaintiffs knew when the bond was given; that their agent was in default and indebted to them in his pre-existing agency, and yet concealed this fact and held him out to the sureties as trustworthy, either expressly or impliedly, such conduct would be a fraud upon the sureties, and would make void the bond as to them."

2. But in charging further "that each default of the agent, after the bond was given, in failing to pay over to the company the money collected by him, was a breach of his duty and obligation, and gave the plaintiffs the right to dismiss him; that if knowing of these defaults, the plaintiffs condoned his fault and continued him in his agency without notice to his sureties of his misconduct, such conduct would be prejudicial to the interest of the sureties, and would discharge them;" he erred in failing to limit the discharge to defaults occurring after the first.

3. The judge erred in refusing to charge the jury "that, as matter of law, it was no fraud upon the sureties to the bond in suit that the principal was behind in his accounts at the time the bond was given, and no notice was given to the sureties."

4. He also erred in refusing to charge "that the plaintiffs were not bound to notify the sureties of each or any default of the principal agent, and that the sureties were not discharged by failure on their part to do so."

Before WALLACE, J., Darlington, September, 1881.

Action by the plaintiffs against Joseph J. Ling, Isaiah L. Wright, James M. Hunter and Ira M. Harrell, commenced August 20th, 1878. The opinion states the case.

*Mr. J. H. Rion*, for appellant, cited the authorities referred to in the opinion, and also the following: 2 *De G. & J.* 609; 3 *Hurlst. & C.* 437; 59 *Ga.* 685; 18 *Wall.* 662; 64 *N. Y.* 385; 1 *Pet.* 61; 1 *Story Eq.*, § 190. Upon the point that a verdict for plaintiffs should have been directed, the learned counsel cited. *Code*, § 289; 35 *Barb.* 651; 15 *N. Y.* 251; 37 *Barb.* 343; 13 *S. C.* 115; 4 *Otto* 284.

*Messrs. Boyd & Nettles,* contra, cited 8 *S. C.* 122; 6 *Id.* 289, 411; 14 *Id.* 177; 1 *Dow* 272, 294; 3 *Moak Eng. R.* 265; 10 *Bush* 23; 2 *White & T. Lead. Cas.* 707; 11 *Wheat.* 59; 3 *Macn. & G.* 378; 58 *N. Y.* 541; 8 *Law R. Ex.* 73.

October 13th, 1882. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. The plaintiff, appellant, a railroad corporation under the laws of this State, employed the defendant, Joseph J. Ling, to act as their agent at Timmonsville, in the county of Darlington. Some four months after the said Ling had been acting as such agent, to wit, on May 1st, 1870, he executed and delivered to the plaintiff a bond with the other parties named as his sureties, conditioned generally for the faithful discharge of his duties, and especially that he would well and truly account for and pay over to the said company all moneys that might come into his hands, or for which he might be accountable by reason of his appointment.

At the time this bond was given, Ling was behind some $497.40. The testimony does not show whether the sureties were aware of this fact or not, when they executed the bond. Ling continued in office until February 17th, 1873, when he was dismissed, at which time he was a defaulter to the amount of $1,737.48, which sum was afterwards reduced by certain cash receipts to $1,526.57. The account between Ling and the company, introduced in evidence, embracing his monthly standing, showed that he was frequently behind from the beginning of his agency. These sums had been carried forward until finally, upon his dismissal, after the credits above referred to had been allowed, the balance against him amounted to $1,526.57. For this balance the action below was brought on the bond of indemnity.

Wright, one of the sureties, was never made a party, and Ling died before the trial, so that at the trial the action stood against the two sureties, Hunter and Harrell. These defendants relied upon two defenses. First, " that Ling, before the execution of the bond sued on, having been agent of the appellants at Timmonsville, had committed default by failing to pay over moneys collected, and was indebted, when the bond was exe-

cuted, in a considerable sum by reason of said default; that the appellants, knowing these facts, concealed the same from the defendants, Hunter and Harrell, and impliedly held out Ling as a trustworthy person and competent agent, when they knew or had reason to believe the contrary." Secondly, "that shortly after the execution of the bond, Ling made default as agent, and thereafter continued to make defaults by failing to pay over money collected by him; that these facts were known to the appellants, but, instead of dismissing Ling from their employment, they gave no notice to his sureties, condoned his faults, connived at the same, and continued him in their employment as agent." The defendants claimed that, on the first ground, the bond was void as to them, and, on the second ground, that if ever liable on the bond they had been discharged from that liability by the fraudulent conduct of the appellants. The action was submitted to a jury under the charge of the presiding judge, and the verdict was for the defendants.

His Honor, Judge Wallace, charged the jury, "that if the plaintiffs knew, when the bond was given, that Ling was in default and indebted to them in his pre-existing agency, and yet concealed this fact, and held him out to them as trustworthy, either expressly or impliedly, such conduct would be a fraud upon the sureties, and would make void the bond as to them;" and, secondly, "that each default of Ling, after the bond was given, in failing to pay over to the company the money collected by him as their agent, was a breach of his duty and obligation, and gave the plaintiffs the right to dismiss him; that, if knowing of these defaults, the plaintiffs condoned his fault and continued him in his agency without notice to his sureties of his misconduct, such conduct would be prejudicial to the interest of the sureties, and would discharge them."

He declined to charge the following requests of the plaintiffs: 1. "That, as matter of law, it was no fraud upon the sureties to the bond in suit that the principal was behind in his accounts at the time the bond was given, and no notice was given to the sureties. 2. That the plaintiffs were not bound to notify the sureties of each or any default of the principal agent, and that the sureties were not discharged by failure on their part to do

so.  3. That there is no proof whatever that the plaintiffs held out Ling as competent and trustworthy, or in any way imposed upon the sureties; and that in law the railroad company did nothing that would discharge the sureties.  4. That there is no fact for the jury to find but the default and the amount of the default; and there is no law in the case to prevent the recovery by the plaintiff of the amount proven."

The appeal is founded upon the charge, and the refusal to charge, as hereinabove.

The charge of the judge, so far as reported, seems to have been directly upon the two grounds of defense relied upon by the defendants and set up in their answer.  It was nothing more than a declaration by the judge, that if the evidence in the case sustained the averments in the answer as to matters therein alleged as a defense, in law the defendants had a good defense. Subject to the modification hereinafter suggested, we think the principles laid down were sound.  The law requires good faith in parties contracting with each other; and the high moral principle, that misrepresentation or concealment of a material fact in reference to the matter contracted about, or any device by the one to prevent the other from being fully informed, will vitiate the contract, is found in all text writers upon the subject of contracts, and is sustained by numerous decisions, not only in this State, but in all the courts where the English common law prevails.

This principle applies in its fullest force to contracts on suretyship.   Judge Story (1 *Eq. Jur.* § 324) says:  " The contract of suretyship imports entire good faith and confidence between the parties in regard to the whole transaction; any concealment of material facts, or any express or implied misrepresentation of such facts, or any undue advantage, information or surprise taken of the surety by the creditor, will undoubtedly furnish a sufficient ground to invalidate the contract."   See also *Ad. Eq.* *179, where the same doctrine is announced.

The propositions of law, charged by the judge, were in accordance with these principles, except that he went too far in holding in the second proposition, that if the appellants knew of Ling's default accruing after the execution of his bond, and yet, not-

withstanding this, they continued to employ him, condoning his default, and giving no notice to his sureties of his misconduct, that this would discharge the sureties entirely. This, no doubt, was good law, so far as it warranted the discharge of the sureties from the culpable defaults occurring subsequent to the first default, after the execution of the bond, but it was error to hold that the sureties would be entirely discharged thereby, even though there had been a fraudulent concealment of the first default. Because, in any event, the first default was a breach of the bond, and against this the fraudulent continuation of the employment of the agent afterwards was no defense. The judge should have limited the discharge, even upon the facts supposed, to the defaults occurring after the first.

We think the judge was in error, too, in refusing to charge the two first requests of the appellants. We have carefully examined the cases referred to by counsel on both sides, and although there is some conflict in the decisions, we think the weight of the argument is in favor of the position, that there must be some positive act of concealment or misrepresentation on the part of the obligee in cases like this before the court, as to some fact which it was his duty to discharge, before the sureties can be relieved. Silence, merely, especially as to facts within the reach of proper inquiry by the sureties, will not be sufficient. The law stands between the parties perfectly impartial, ready to rebuke fraud, concealment, or misrepresentation on the part of either, but carelessness and want of proper vigilance are left to their own fruits. There must be an intent to deceive, not a mere passive omission to state everything within the knowledge of the creditor. The intent is the gist of the fraud, and this should be made to appear. *Stafford* v. *Newsom,* 9 *Ired.* 507; *De Colyar on Prin. and Sur.* 367; *Atlas Bank* v. *Brownell,* 9 *R. I.* 168; *Roper* v. *Sangamon Lodge,* 91 *Ill.* 518.

We were at first inclined to think that the presiding judge, in his charge, had laid down the law applicable to such cases in its fullest extent, subject to the modification hereinabove. He required actual concealment or misrepresentation to be found as a fact by the jury before relieving the sureties. This seemed to be all that the plaintiffs could claim. But upon examination of

the cases, where this question has been discussed, while we do not find any legal adjudication of what will constitute conceal-ment or misrepresentation in such form as to be applied as a test in every case where the question is presented, yet we find several decisions in other States, where certain facts have been held not to amount to such concealment. For instance it has been held as matter of law that it was no fraud upon the sureties, that the principal was behind in his accounts at the time he gave his bond of indemnity and no notice given to the sureties, and also that the obligee was not legally bound to notify the sureties of each and every default of the principal. See *The Guardian of the Stakely Union* v. *Stratter*, 22 *L. T. Eng.* 84; *Roper* v. *Sangamon Lodge*, 91 *Ill.* 518; *Pittsburg, Fort Wayne and Chicago Railroad Co.* v. *Shaffer et al.*, 59 *Pa. St. R.* 350; *Watertown Ins. Co.* v. *Simmons*, 131 *Mass.* 85; *Taft* v. *Gifford*, 13 *Met.* 187.

It is the business of the surety to see for himself that his principal performs the duty which he has guaranteed. The surety is bound to inquire for himself, and cannot complain that the creditor does not notify him of the state of the accounts. Now the principle, as laid down in these cases referred to above, is precisely what the appellant requested the judge to charge in his two first requests, and which, being refused, is made grounds of exception.

The strongest adverse case is the case of *Phillips* v. *Foxall*, 3 *Moak's Eng. R.* 264. But that case, when analyzed, does not conflict with the principles above. That case turned upon a demurrer. The defendant set up the defense, that the plaintiff had condoned the default of the servant in not paying over money collected, which the defense directly charged had been embezzled by the servant, and which fact was known to the employer, and, notwithstanding this, he had continued the servant in his employment without notice to the sureties of the embezzlement. The plaintiff demurred to this plea. The court overruled the demurrer and sustained the plea. The court said: "We think that in a continuing guarantee for the honesty of the servant, if the master discovers that the servant has been guilty of acts of dishonesty in the course of the service to which the guarantee relates, and instead of dismissing the servant, as

he may do at once, and without notice, he chooses to continue in his employ a dishonest servant, without the knowledge and consent of the surety, express or implied, he cannot afterwards have recourse to the surety to make good any loss which may arise from the dishonesty of the servant during the subsequent service." The ground of the defense in that case was the dishonest act of the servant—embezzlement—known to the plaintiff. The ruling of the court on the demurrer, which admitted the truth of the charge against the servant, was right, and the defense was properly admitted.

But there is a broad distinction between a case of that kind and a case where it simply appears that the agent is behind in his accounts. Knowledge on the part of the employer of dishonesty and corruption in his agent, without disclosure, would amount to a fraudulent concealment, but a falling behind in current accounts by an agent is not always the result of dishonesty. We do not think that simply the failure on the part of the employer to give notice to the sureties that the agent is behind in his accounts at the time he executes the bond, or that he has fallen behind since the execution of the bond, is such a fraudulent concealment of material facts as, in itself, without more, should discharge the sureties. These facts might properly go to the jury with other facts bearing upon the question of fraudulent concealment and have such weight as would be proper, but standing alone they would not be sufficient to discharge the sureties.

We think the appellant was entitled to the charge requested in the two first requests. The other requests of appellant were properly refused, involving, as they did, questions of fact mostly.

It is the judgment of this court that the judgment of the Circuit Court be reversed and the case be remanded for a new trial.