Mystic Workers of the World, Plaintiff in Error, v. United States Fidelity & Guaranty Company, Defendant in Error.

Gen. No. 14,811.

1. SURETYSHIP—*how surety bonds construed.* A surety bond is a contract between the parties and their legal rights must be determined from the conditions of the bond forming such contract, for by such conditions are the parties bound. Such contract having been freely entered into, the respective rights of the parties are confined within the limits of its terms and provisions.

2. SURETYSHIP—*particular indemnity bond construed. Held,* that the surety bond in suit covered only future defalcations; that the company was not liable for defalcations taking place prior to its execution and delivery.

Action in debt. Error to the Municipal Court of Chicago; the Hon. EDWIN K. WALKER, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed December 23, 1909.

224   APPELLATE COURTS OF ILLINOIS.

Mystic Workers of the World v. U. S. F. & G. Co., 152 Ill. App. 223.

BERTRAND LICHTENBERGER, for plaintiff in error.

JUDAH, WILLARD, WOLF & REICHMANN, for defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This case was tried before a judge of the Municipal Court, without the intervention of a jury, upon an agreed statement of facts, which appears in the record. Defendant was sued upon a surety bond known as a schedule bond, which indemnified plaintiff against certain delinquencies, among others, of the financial officers of subordinate lodges, called "Bankers," among which was the Blue Island Lodge No. 369, of which one Ernest Boermel was at the time banker. The condition or operative words of the bond are to "make good and reimburse to the insured any and all pecuniary loss sustained by the insured by reason of the fraud or dishonesty of the * * * banker of any one of the aforesaid subordinate lodges mentioned in the schedule hereunto annexed * * * in connection with his duties as such * * * banker, * * * and which shall have been committed at any time after the first day of October, 1906." The maximum of indemnity is $400. Boermel had been successively elected banker of the Blue Island Lodge commencing with December 1, 1904, and went out of office finally by resignation November 15, 1906. The bond sued upon covered a period of time commencing October 1 to October 21, 1906, the bond being cancelled on the latter date. On January 5, 1905, there was turned over to Boermel as such banker $729.94. On December 7, 1905, he was re-elected and continued in such office, performing its duties, until November 15, 1906. There had been placed in his hands as such banker, after deducting all lawful disbursements to and including October 1, 1906, $891.68. After the last mentioned date and before the 21st day of October, 1906,

there came to his hands as such banker, plus disbursements made by him for the Lodge, $16.90. We quote the following from the agreed statement of facts: "that he, the said Ernest Boermel, was the banker of the Blue Island Lodge No. 369 Mystic Workers of the World located at Blue Island, Cook county, Illinois, from January 4, 1905, to and including November 15, 1906; that the funds of said lodge received by him upon his taking his office as aforesaid and up to and prior to the 1st day of July, 1905, were appropriated to his own use; that all of the funds of the lodge coming into his hands after July 1, 1905, and until October 1, 1905, were used for the payment of the proper current lodge expenditures, and the balance applied to his own use as fast as said funds were placed in his possession; that on and immediately prior to the 1st day of October, 1906, he had no moneys whatsoever belonging to said lodge 369 of the Mystic Workers of the World in his possession, either as banker or individually, or in any other capacity, all funds received by him previous to said October 1, 1906, having been applied by him as aforesaid either to the proper expenses of the lodge or appropriated to his own use; that from and including the first day of October, 1906, up to and including the fifteenth day of November, 1906, he applied to the proper expenses of said lodge all sums of money received by him, with the exception of $16.90, which he appropriated to his own use; that he notified the members of said lodge when he was called upon for his resignation * * * that he had not had in his possession on or since the thirtieth day of September, 1906, said sum of $891.68, or any of the moneys which the books showed he had received as banker of said lodge, as aforesaid, on or before said date or on or before said October 1, 1906; that he had not on said October 1, 1906, nor at any time since nor at any time during his term of office as banker as aforesaid the said sum of $891.68, or any other sum on deposit in * * * Illinois Trust & Savings

226     APPELLATE COURTS OF ILLINOIS.

Mystic Workers of the World v. U. S. F. & G. Co., 152 Ill. App. 223.

Bank, or any other bank.'' The court found the issues for the plaintiff, assessing its damages at $16.90, the amount of Boermel's defalcation as banker subsequent to October 1, 1906, and entered judgment thereon, which judgment plaintiff asks this court to reverse on review and enter one here for the maximum amount recoverable, viz.: $400 with interest.

A surety bond is a contract between the parties and their legal rights must be determined from the conditions of the bond forming such contract, for by such conditions are the parties bound. Such contract having been freely entered into, the respective rights of the parties are confined within the limits of its terms and provisions. The infirmity in the contention of counsel for plaintiff rests in the invoking, as authority pertinent and controlling in this case, decisions of the courts rendered in the case of bonds, where the conditions are radically different from those in the case at bar. Roper v. Trustees of Sangamon Lodge, 91 Ill. 518, is said to be controlling. But we think the case at bar differs materially from that case. The operative words in the conditions of these bonds are dissimilar in the language used and necessarily in their legal import. In the Roper case the condition was that the treasurer should faithfully and honestly perform all the duties of his office; while in this case the operative words of the bond are that defendant will make good and reimburse plaintiff for any and all pecuniary loss sustained by it by reason of the fraud or dishonesty of its banker, Boermel, in connection with his duties as such banker, occurring any time after October 1, 1906. The Roper bond is similar in purport to the bonds of public officers, while the bond of defendant is expressly limited to pecuniary loss occasioned by fraud or dishonesty of the banker occurring after October 1, 1906. In the Roper case the condition was that the treasurer should faithfully and honestly perform all the duties of his office, which included not only a faithful accounting, but a payment of the amounts shown by

such accounting to be due from him during the life of the bond. We cannot agree with counsel that the bonds in this and the Roper case are either in fact or law identical or even similar, or that the decision in the Roper case is applicable to or controlling of this. From the statement of fact it clearly appears that Boermel, the banker, had embezzled the amount chargeable to him in his accounts prior to October 1, 1906, and had since that date embezzled $16.90, for which plaintiff recovered judgment. This plaintiff admits, but argues that while so conceding, yet such facts were inadmissible as evidence sufficient to exculpate defendant from the full amount of its liability on the bond. We think Schoeneman v. Martyn, 68 Ill. App. 412, and Stern v. People, 96 Ill. 475, are sufficient authority for the admission of this evidence. In the Schoeneman case the court say: "The treasurer testified that at the commencement of his last term he did not have any money belonging to the lodge in his possession. An objection to this testimony was sustained, and the court refused to permit appellant to show that the treasurer, at the expiration of his first term, had spent all of the apparent balance on hand, and was then a defaulter to the extent of the entire amount which should have been on hand, and that nothing was received during his second term from transactions of the first term. The latest utterance of the Supreme Court touching the question here presented is in Stern et al. v. The People, 96 Ill. 475. Following this, we must hold that the bond covers future transactions only. The condition, after reciting his election, and when his term will begin, says: 'By reason whereof divers sums of money will come into his hands.' Its language is 'shall' pay over all money 'which shall at any time have come into his hands as master of exchequer.' The recitals show this to have reference only to what should come into his hands subsequent to the giving of the bond. All that came into his hands after the bond was given has been paid over. What

228    APPELLATE COURTS OF ILLINOIS.

Mystic Workers of the World v. U. S. F. & G. Co., 152 Ill. App. 223.

was not in his hands when the bond was given and never thereafter came, the bond does not cover. The jury should not have been instructed to find for appellee, and appellant should have been permitted to show the actual state of the treasury when the bond was given. Stern et al. v. The People, 96 Ill. 475; Inhabitants of Rochester v. Randall et al., 105 Mass. 295; The County of Mahaska v. Ingalls, 16 Ia. 81."

And in the Stern case it is said: "Under the view taken by a majority of the court it will only be necessary to notice the second special plea. That plea alleges that the bond upon which defendants were sureties was for the term commencing December, 1877; that Seiber was treasurer of the County of St. Clair for a term of two years, from December, 1875, to December, 1877; that he defaulted during that term, and that the sum of money alleged to have been in his hands on the day mentioned in the declaration had been misappropriated during that term. The court improperly sustained a demurrer to that plea. No reason is perceived why it does not present a full defense to the cause of action alleged against defendants. If the defaulting officer misappropriated funds that came to him in his official capacity during a term of office when defendants were not his sureties, they were under no legal obligation to make good such defalcation. That obligation rested upon his sureties on his bond for the term in which the misappropriation occurred. It is but stating a truism to say if the funds were misappropriated during a former term, it was not possible for him to deliver them to his successor. The fact such officer was his own successor can make no difference."

Bonds of the character of the one here involved have, as a general rule, no retroactive effect, and therefore defendant having in direct terms made its surety bond prospective by restricting its liability to a date commencing October 1, 1906, it cannot be held

liable for a defalcation existing previous to that date. U. S. v. Boyd, 15 Peters 187.

The other questions raised become unimportant in the view we take of the law of this case as above indicated. The judgment of the Municipal Court is therefore affirmed.

*Affirmed.*