**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1771

JANE DOE-2,

Plaintiff – Appellant,

v.

SHERIFF OF RICHLAND COUNTY, in his official capacity doing business as
Richland County Sheriff's Department; SHERIFF LEON LOTT; CAPTAIN JOHN
E. EWING,

Defendants – Appellees,

and

RICHLAND COUNTY SCHOOL DISTRICT 2; JEFF TEMONEY,

Defendants.

Appeal from the United States District Court for the District of South Carolina, at
Columbia.  Cameron McGowan Currie, Senior District Judge.  (3:20-cv-02274-CMC)

Argued:  December 8, 2022                           Decided:  June 15, 2023

Before HARRIS and RICHARDSON, Circuit Judges, and Patricia Tolliver GILES,
District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished opinion.  District Judge Giles wrote the opinion, in which Judge
Harris and Judge Richardson joined.

**ARGUED:** Scott Christopher Evans, EVANS MOORE, LLC, Georgetown, South Carolina, for Appellant. Andrew Lindemann, LINDEMANN & DAVIS, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Kathleen C. Barnes, BARNES LAW FIRM, LLC, Hampton, South Carolina; James B. Moore, III, EVANS MOORE, LLC, Georgetown, South Carolina, for Appellant. Robert D. Garfield, CROWE LAFAVE, LLC, Columbia, South Carolina, for Appellees.

───────────

Unpublished opinions are not binding precedent in this circuit.

2

GILES, District Judge:

From fall 2015 to spring 2016, Deputy Jamel Bradley, a school resource officer employed by the Richland County Sheriff's Department at Spring Valley High School, engaged in sexual activity with Jane Doe-2, a seventeen-year-old female student at the high school. In December 2015, Sheriff Leon Lott and Captain John Ewing of the Richland County Sheriff's Department learned that Bradley had arranged to meet Jane Doe-2 late at night, off school premises. Beyond brief questioning of Bradley and Jane Doe-2 about the incident, no further investigation was done, and the relationship continued. In May 2016, Jane Doe-2 terminated the relationship with Bradley and graduated from Spring Valley High School. Two years later, another minor female student at Spring Valley High School, Jane Doe-1, sued the Richland County Sheriff's Department, Sheriff Lott, and Captain Ewing alleging that Bradley had sexually assaulted her and that the defendants were liable for failing to protect her and to properly supervise Bradley.

Jane Doe-2 contends that, during Jane Doe-1's case, she learned she had similar causes of action against the same defendants. Accordingly, in June 2020, Jane Doe-2 filed suit alleging that Bradley had sexually assaulted her and that the Richland County Sheriff's Department, Lott, and Ewing were liable under state law and 42 U.S.C. § 1983 for failing to protect her and to properly supervise Bradley, and for concealing their knowledge about Bradley's history of inappropriate behavior with minor female students. The district court granted summary judgment in favor of the Richland County Sheriff's Department, Lott, and Ewing, finding that Jane Doe-2 had initiated her case too late, past the expiration of the applicable statutes of limitations, and that equitable tolling, on the basis of fraudulent

3

concealment or otherwise, did not apply.  Jane Doe-2 appeals that decision.  For the reasons that follow, we affirm the district court's judgment.

## I.

## A.

During the 2015 to 2016 school year, Appellant Jane Doe-2 was a seventeen-year-old student at Spring Valley High School ("SVHS") in Richland County, South Carolina.  J.A. 10, 732–34.  Deputy Jamel Bradley was a thirty-six-year-old man, employed by Appellee Richland County Sheriff's Department ("RCSD") and assigned to SVHS as a school resource officer ("SRO").  J.A. 13–14, 100.  In approximately November 2015, Bradley commenced a sexual relationship with Jane Doe-2.  J.A. 100–06, 115–17.  Bradley and Jane Doe-2 emailed and texted, and arranged meetings to have sex, including in Bradley's school office and on two occasions at Bradley's home.  J.A. 103–05, 116–23, 377–86, 500–02.

On December 3, 2015, Bradley and Jane Doe-2 met in a parking lot behind a Target store at 10:30 p.m.  J.A. 16, 342.  Two RCSD officers, who were in the Target parking lot on an unrelated matter, observed the meeting and reported the incident to the SRO Captain, Appellee John Ewing.  J.A. 303–04.  The next morning, Ewing "skipped the Chain of Command" and informed Appellee Sheriff Leon Lott directly about the incident.  J.A. 306.  Neither Lott nor Ewing reported the incident to the RCSD Internal Affairs Division.  J.A. 331.  Ewing interviewed Bradley and Jane Doe-2 separately to "find out if their stories matched up."  J.A. 315.

4

During school hours, Ewing asked a vice principal to get Jane Doe-2 so that he could interview her. J.A. 595. Prior to the interview, the vice principal attempted, unsuccessfully, to contact Jane Doe-2's parents. J.A. 595–96. Ewing proceeded to interview Jane Doe-2; Jane Doe-2's parents were never notified of the incident. J.A. 306, 342–43, 595–96. Ewing told Jane Doe-2 that he was aware she was texting an SRO and asked why she met with Bradley at the Target the night before. J.A. 306–07, 342. Ewing did not indicate that RCSD officers had seen her meeting Bradley at the Target. J.A. 342. Jane Doe-2 stated she had met with Bradley to get dating advice and denied that Bradley made her feel uncomfortable or that their conversations turned into anything sexual. J.A. 306–07, 342. Jane Doe-2 also denied that "there was anything going on" with Bradley. J.A. 342. When Ewing questioned Bradley, Bradley stated that he had met with Jane Doe-2 to talk about issues with her friends. J.A. 307, 315. Ewing stated that it was "inappropriate" to meet a student after school hours and "[i]t looked even worse since it was a female." J.A. 307. Ewing told Bradley "to never meet anyone again after school hours" unless it was an emergency, and "to take another Deputy with him" if a female student was involved. *Id.* Ewing did not access Bradley's school cell phone or emails and did not investigate the incident further. J.A. 297, 316–18.

In May 2016, a parent reported to the school district that Bradley was having an "affair" with an unidentified minor female student. J.A. 399. The parent stated that she had an audio recording of her daughter and the unidentified student discussing her relationship with Bradley and pictures that Bradley had sent. *Id.* Although the parent did not identify the female student, it was Jane Doe-2. J.A. 343, 503–04. RCSD Internal

5

Affairs Division tried several times to contact the parent who made the report, but she did not respond to their inquiries. J.A. 399. Internal Affairs questioned Bradley briefly and he denied having a sexual relationship with or sending sexual text messages, including pictures, to any student at SVHS. J.A. 399–400. The investigation was closed as "non-sustained" in June as Internal Affairs decided "insufficient evidence exist[ed] to reasonably prove or disprove the allegation" against Bradley. J.A. 397, 420.

Jane Doe-2 ended her relationship with Bradley shortly before her graduation from SVHS, in May 2016. J.A. 343, 734. In July 2016, Jane Doe-2 turned eighteen. J.A. 732.

B.

In March 2018, another female student at SVHS ("Jane Doe-1") contacted school administrators about a rumor circulating among students that she was pregnant with Bradley's child. J.A. 426, 432. When notified about the pregnancy rumor, Ewing determined that no further action was needed as there was "no actual complaint and it was only [a] rumor." J.A. 426. In April 2018, Jane Doe-1 again contacted school administrators with a "hypothetical story" about Bradley sexually assaulting a student, "Ashley." J.A. 427, 433–34. It was later determined that "Ashley" was Jane Doe-1. J.A. 243. Ewing, again, determined that nothing could be done because there was "no actual complaint" and this was a "rumor" and "hypothetical story." J.A. 427. Ewing discussed the incident with Bradley and warned him to stay away from Jane Doe-1. *Id.* Later that month, Jane Doe-1's mental health provider contacted SVHS with an additional report about Jane Doe-1's story about "Ashley"; the report was referred to the RCSD Office of Internal Affairs and Criminal Investigation Division. J.A. 427–28, 434–35. A criminal investigation was

6

initiated in April but was abruptly closed in May.  J.A. 244–46.

In May 2018, Jane Doe-1 submitted a records request to RCSD Chief Legal Counsel pursuant to the Freedom of Information Act ("FOIA"), S.C. Code Ann. §§ 30-4-10 to -165, seeking, in relevant part:  Bradley's personnel and supervisor file; any polygraph examinations Bradley had been subject to; any complaints and investigative findings pertaining to Bradley; and policies and procedures for investigating SROs at SVHS.  J.A. 455–56.  RCSD produced some documents in September 2018, and a court ordered RCSD to produce additional documents in January 2019.  J.A. 456–59.

On October 8, 2018, Jane Doe-1 brought a federal civil lawsuit alleging negligence and supervisory liability against Lott, Ewing, and RCSD based on her sexual assault by Bradley earlier that year.  J.A. 567–90.  Jane Doe-1's lawsuit detailed a history of complaints to RCSD of Bradley's inappropriate behavior with minor female students. These allegations included the following:

- In 2010, RCSD "verbally counseled" Bradley after he was discovered giving female students rides home in his patrol vehicle.  J.A. 280.

- In 2011, a cheerleading coach at another high school reported that Bradley "may be having a personal relationship with" a female student after the coach observed Bradley and the student talking after football games.  J.A. 178, 281.  The student told the coach that she and Bradley communicated on Facebook, that it "won't be long before she is eighteen," and that Bradley was "married to a white woman and no white woman can satisfy a black man the way a black woman can."  J.A. 178, 281.  Bradley denied communicating with the student on Facebook, but admitted that he gave her information about his personal life.  J.A. 179, 280.  Both Bradley and the student denied having an inappropriate relationship. J.A. 178–79.  Bradley was "counseled on creating situations where others may perceive a relationship as inappropriate."  J.A. 179.

- In November 2011, while citing a female student for a dress code violation, a female school administrator told a female student that her

7

dress "was too short and sheer." J.A. 178. Bradley then commented in front of the student that "the dress didn't appear too short or sheer." *Id.* The administrator told Bradley to leave dress code violations involving female students to the school administration, particularly because "she didn't want parents upset or accusing him of inappropriately looking at female students." *Id.*

Lott was deposed in July 2019 in connection with the Jane Doe-1 litigation. When asked if he thought Bradley "exercised the appropriate judgment to be an effective [SRO]" Lott testified that Bradley was "a good [SRO], he's done a good job as a [SRO]." J.A. 324. Lott also confirmed that he thought Bradley "exercise[d] the appropriate judgment to safely interact with teenage girls." *Id.* However, several months later in November 2019—after Bradley had been arrested—Sheriff Lott made a statement to the press condemning Bradley. Lott stated, "I'm sorry that we had someone that I call a sexual predator. . . . And, unfortunately, we had a monster that worked among us and that we did not know about. But we do now know, and he has been arrested." J.A. 389.

Bradley was fired from RCSD in October 2019, and subsequently was criminally charged with sexually assaulting Jane Doe-2. J.A. 23, 464.

In November 2019, Jane Doe-2 was served with a subpoena and deposed in the Jane Doe-1 case. J.A. 343.

## C.

On June 16, 2020, Jane Doe-2 filed a complaint in the United States District Court for the District of South Carolina. She alleged, in relevant part, that Appellees had knowledge of Bradley's propensity to engage in inappropriate sexual behavior with minor students but concealed that knowledge; failed to properly investigate allegations of

8

Bradley's numerous instances of inappropriate sexual behavior; and allowed Bradley to continue working as an SRO, which enabled him to sexually assault her. Jane Doe-2 alleged that Appellees deliberately concealed their knowledge of Bradley's history of inappropriate behavior, and that she did not know of Appellees' knowledge or failure to act until she was deposed in connection with Jane Doe-1's case. Jane Doe-2 pleaded claims for negligence and gross negligence, and negligent hiring, supervision, and retention under state law against RCSD. She also pleaded a supervisory liability claim under 42 U.S.C. § 1983 against Lott and Ewing. Jane Doe-2 alleged that her claims were timely because S.C. Code Ann. § 15-3-555 tolled the statutes of limitations for her claims.[1] Appellees moved for summary judgment, contending that the applicable statutes of limitations barred Jane Doe-2's claims.

On June 22, 2021, the district court entered an order granting summary judgment in favor of Appellees and dismissing the case with prejudice. The district court found that the two-year statute of limitations for Jane Doe-2's state law claim against RCSD had expired in 2018 and the three-year statute of limitations for her section 1983 claim against Lott and Ewing had expired in 2019. The district court found that the statute of limitations in S.C. Code Ann. § 15-3-555 did not apply, and thus, held that Jane Doe-2's claims were barred by the statutes of limitations. The district court also held that Jane Doe-2 failed to

---

[1] Section 15-3-555 provides that an action for injury "arising out of an act of sexual abuse [] must be commenced within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal relationship between the injury and the sexual abuse [], whichever occurs later." S.C. Code Ann. § 15-3-555(A).

present sufficient evidence showing she was entitled to tolling of the limitations periods based on Appellees' fraudulent concealment.

## II.

"Orders granting summary judgment are reviewed *de novo*[.]" *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). A genuine dispute about a material fact exists if "after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). All inferences must be made in favor of the nonmoving party. *Hawkins v. McMillan*, 670 F. App'x 167, 168 (4th Cir. 2016). A party survives summary judgment by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

## III.

### A.

Jane Doe-2 raises two questions on appeal with respect to her section 1983 claim against Appellees Lott and Ewing: (1) whether there is a genuine issue of material fact as to whether she knew or should have known of her section 1983 claim prior to the expiration of the three-year statute of limitations; and (2) whether S.C. Code Ann. § 15-3-555, the

sexual abuse statute, tolls the statute of limitations for her section 1983 claim.  The Court

turns to those arguments first.

1.

In sum, Jane Doe-2 argues that the district court erred in finding that her section

1983 claims were time barred because the statute of limitations did not begin to run until

she was deposed in November 2019 as part of the Jane Doe-1 litigation.  We find that there

is no genuine dispute over the fact that Jane Doe-2 knew or should have known of her

section 1983 supervisory liability claim against Lott and Ewing when Ewing interviewed

her about Bradley and when the sexual relationship with Bradley continued.

"Under federal law a cause of action accrues when the plaintiff possesses sufficient

facts about the harm done to him that reasonable inquiry will reveal his cause of action."

*Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (quoting *Nasim v.*

*Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995)).  "[T]o determine when a

claimant possessed sufficient facts to know or have reason to know of the alleged injury,

we may look to the common-law cause of action most closely analogous to the

constitutional right at stake as an 'appropriate starting point.'"  *Id.* (quoting *Heck v.*

*Humphrey*, 512 U.S. 477, 483 (1994)).  For most common law torts, a plaintiff's cause of

action accrues, and the limitations period commences, when the plaintiff knows or has

reason to know of her injury.  *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 389

(4th Cir. 2014).  Thus, "'the standard rule [is] that accrual occurs when the plaintiff has a

complete and present cause of action' against a defendant—that is, when the plaintiff

11

knows or has reason to know of his injury." *Id.* (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).

To establish supervisory liability under section 1983, a plaintiff must show that (1) the supervisor was actually or constructively aware that his subordinate's conduct posed a "pervasive and unreasonable" risk of constitutional injury; (2) the supervisor was deliberately indifferent to that risk; and (3) there was an "'affirmative causal link' between the supervisor's inaction" and the plaintiff's constitutional injury. *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

Thus, to determine whether Jane Doe-2 knew or had reason to know of her injury before her section 1983 claim expired, the Court must assess what facts Jane Doe-2 knew and when she learned those facts. Jane Doe-2 contends that she did not know or have reason to know of her injury until November 2019, when she was deposed in Jane Doe-1's case. Jane Doe-2 contends that "[u]ntil November 2019, Jane Doe-2 knew only that Bradley sexually assaulted her, Ewing and the vice-principal knew they met behind Target, and after she denied a sexual relationship, nothing was done to remove Bradley from his job as a resource officer." Appellant's Op. Br. at 30. Thus, Jane Doe-2 was aware that: Ewing knew she and Bradley had been communicating via phone and that they had met at night, off school premises, an incident that was cause for her to be called in for questioning at school; Ewing did not follow up with her or her parents about the incident after this meeting; Bradley remained in his SRO position; and her involvement with Bradley went

12

on until she ended things shortly before graduation in May 2016.[2]  J.A. 343.  Jane Doe-2

became aware of these facts between December 2015—when she was interviewed by

Ewing—and when the relationship continued shortly thereafter.    J.A. 306, 342.

Accordingly, these facts alone put Jane Doe-2 on notice as to her supervisory liability claim

under section 1983.

As Jane Doe-2 was still a minor during this period, the limitations period was tolled

until she turned eighteen in July 2016.[3]  Regardless of Jane Doe-2's minority, section 15-

3-40 "does not provide that it is tolled when the plaintiff['s] action has accrued, *yet the*

*plaintiff does not realize the full extent of his injuries*."  *Doe v. R.D.*, 417 S.E.2d 541, 542

(S.C. 1992) (emphasis added) (holding that a plaintiff who was objectively aware of sexual

abuse when it was occurring should have known at that time that he had a cause of action);

*see also Doe v. Crooks*, 613 S.E.2d 536, 538 (S.C. 2005) (same); *Nasim*, 64 F.3d at 955

(4th Cir. 1995) ("Accrual of a claim does not 'await awareness by the plaintiff that his

injury was negligently inflicted.'" (quoting *United States v. Kubrick*, 444 U.S. 111, 123

(1979))).  In other words, just because Jane Doe-2 did not (or, due to her minority, could

not) appreciate the legal significance of the facts underlying the circumstances, does not

---

[2] Jane Doe-2 testified that, after she was interviewed by Ewing, she and Bradley decided to take a "short break" but then continued the sexual relationship.  J.A. 342.

[3] Claims brought pursuant to section 1983 are subject to S.C. Code Ann. § 15-3-40, which states that if a cause of action accrues while a person is "within the age of eighteen years[,] . . . the time of the disability is not a part of the time limited for the commencement of the action[.]"  Thus, the district court correctly found that "once Jane Doe-2 reached the age of majority in 2016, she had three years and more than sufficient information to discuss potential claims with an attorney and bring a timely lawsuit."  J.A. 535.

mean she was objectively unaware of those facts at that time. As the district court stated, Jane Doe-2 had the opportunity to bring suit once she reached the age of majority. Thus, the district court correctly found that Jane Doe-2's June 2020 complaint, filed after the expiration of the three-year statute of limitations, was untimely.[4]

2.

Next, the Court considers whether S.C. Code Ann. § 15-3-555 tolls the three-year statute of limitations for Jane Doe-2's section 1983 claim. Jane Doe-2 argues that the district court erred by declining to apply section 15-3-555 as a tolling provision for her section 1983 claim and finding that it tolled the statute of limitations at least until Jane Doe-2 turned twenty-seven years old. We conclude, however, that the district court correctly found that section 15-3-555 did not apply to Jane Doe-2's section 1983 claim.

Section 15-3-555 is not a tolling provision, but rather a statute of limitations inapplicable to Jane Doe-2's section 1983 claim. That section 15-3-555 imposes a statute of limitations is evident from its plain text, which provides:

> An action to recover damages for injury to a person arising out of an act of sexual abuse or incest must be commenced within six years after the person becomes twenty-one years of age or within three years from the time of discovery by the person of the injury and the causal relationship between the injury and the sexual abuse or incest, whichever occurs later.

S.C. Code Ann. § 15-3-555(A). The title of section 15-3-555—"Statute of limitations for action based on sexual abuse or incest"—identifies the provision as providing a statute of

---

[4] Per S.C. Code Ann. § 15-3-530(5), the applicable statute of limitations for Jane Doe-2's section 1983 claim is three years. *See infra* Section III.A.2.

limitations. S.C. Code Ann. § 15-3-555. The intent of state legislators also confirms that section 15-3-555 should be regarded as a statute of limitations. The title of the session law enacting section 15-3-555 stated it was

> an act . . . to amend Chapter 3, Title 15 [of the South Carolina Code] by adding section 15-3-555 *so as to provide a statute of limitations for actions based on sexual abuse or incest of six years* from the time a person becomes twenty-one or within three years of discovering the injury and the causal relationship between the injury and the abuse or incest and to provide that parental immunity is not a defense to this action[.]

2001 S.C. Acts 102 (emphasis added). Thus, based on legislative intent and the plain text of the statute, it is evident that section 15-3-555 is a statute of limitations.

The Supreme Court has specified that the statute of limitations in a section 1983 action is borrowed from the state's "*general or residual* statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 250 (1989) (emphasis added); *see also Brooks*, 85 F.3d at 181 (noting that "[t]he parties agree that [] the state limitations period governing a claim for damages for personal injuries applies to a § 1983 action, regardless of the allegations in the complaint"). The Supreme Court clarified that a general provision "applies to all personal injury actions with certain specific exceptions" while a residual provision "applies to all actions not specifically provided for, including personal injury actions." *Owens*, 488 U.S. at 246–47. The Supreme Court reasoned that because "every State has one general or residual statute of limitations governing personal injury actions" that is "easily identifiable by language or application[,]" parties seeking to bring section 1983 claims would be able to "readily ascertain, with little risk of confusion or unpredictability, the applicable limitations period in advance of filing a § 1983 action." *Id.* at 245–48.

15

In South Carolina, the general statute of limitations for personal injury actions is three years and is codified at S.C. Code Ann. § 15-3-530(5). Jane Doe-2 does not dispute the district court's finding that S.C. Code Ann. § 15-3-530(5) supplies the applicable statute of limitations for her section 1983 claim. Thus, because the applicable statute of limitations for Jane Doe-2's section 1983 claim is set forth in section 15-3-530(5), the district court correctly found that the statute of limitations set forth in section 15-3-555 does not apply. Accordingly, as the district court correctly found, "once Jane Doe-2 reached the age of majority in 2016, she had three years and more than sufficient information to . . . bring a timely lawsuit" and, thus, her complaint filed in June 2020 is untimely. J.A. 535.

B.

The Court next considers the issue of fraudulent concealment. Jane Doe-2 contends that because Appellees fraudulently concealed facts comprising the bases of her section 1983 claim against Lott and Ewing and her state law claim against RCSD,[5] she is entitled to tolling of the limitations periods for these claims. We conclude that the district court correctly found that Jane Doe-2's evidence "fails to amount to a showing of fraudulent concealment," and thus, her claims were not timely brought. J.A. 538.

Under federal law, "the fraudulent concealment tolling doctrine applies in situations 'where the defendant has wrongfully deceived or misled the plaintiff in order to conceal

---

[5] The district court found that the two-year statute of limitations under S.C. Code § 25-78-110 applies to Jane Doe-2's state law negligence claims against the RCSD, and that it was tolled until Jane Doe-2 turned eighteen years old in 2016. J.A. 526. Jane Doe-2 does not challenge this on appeal.

16

the existence of a cause of action.'" *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019) (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). "Under this doctrine, because of the defendant's wrongful acts of concealment, the plaintiff is not aware of the facts giving rise to his claim within the limitations period." *Id.* Essentially, a plaintiff must show: "(1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* at 548 (quoting *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995)). On the first element, "a plaintiff must 'provide evidence of affirmative acts of concealment' by the defendants." *Id.* at 553 (quoting *Marlinton*, 71 F.3d at 126. "A plaintiff satisfies its burden to allege an affirmative act of concealment if, for example, it alleges that the defendant employed 'some trick or contrivance intended to exclude suspicion and prevent inquiry.'" *Id.* (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2010)); *see Wood v. Carpenter*, 101 U.S. 135, 143 (1879) ("Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry.").

Under South Carolina law, a limitations period may be tolled if there are "deliberate acts of deception by a defendant calculated to conceal from a potential plaintiff that he has a cause of action, thereby inducing him to postpone institution of suit[.]" *Strong v. Univ. of S.C. Sch. of Med.*, 447 S.E.2d 850, 852 (S.C. 1994) (quoting 1 David W. Louisell & Harold Williams, Medical Malpractice ¶ 13.03, at 13–67 (1993)). However, in most instances, silence without more does not amount to fraudulent concealment: "[n]on-

17

disclosure becomes fraudulent concealment only when it is the duty of the party having knowledge of the facts to make them known to the other party to the transaction." *Lawson v. Citizens & S. Nat'l Bank of S.C.*, 193 S.E.2d 124, 126 (S.C. 1972); *see also Holly Hill Lumber Co. v. McCoy*, 23 S.E.2d 372, 378 (S.C. 1942) (stating that a party "must limit himself to silence in order to escape the imputation of fraud" and "[i]f in addition to the party's silence there is any statement, even in word or act on his part, which tends affirmatively to a suppression of the truth, or to a withdrawal or distraction of the other party's attention or observation from the real facts, the line is overstepped, and the concealment becomes fraudulent"); *Wilmington, Columbia & Augusta R.R. Co. v. Ling*, 18 S.C. 116, 120 (1882) ("Silence, merely, especially as to facts within the reach of proper inquiry by the sureties, will not be sufficient. . . . There must be an intent to deceive, not a mere passive omission to state everything within the knowledge of the creditor."). "According to the South Carolina courts, there are three situations in which a duty exists to disclose information regarding one's intentions:

> '(1) where it arises from a preexisting definite fiduciary relation between the parties; (2) where one party expressly reposes a trust and confidence in the other with reference to the particular transaction in question, or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied; (3) where the very contract or transaction itself, in its essential nature, is intrinsically fiduciary and necessarily calls for perfect good faith and full disclosure without regard to any particular intention of the parties.'"

*Cheney Bros. v. Batesville Casket Co.*, 47 F.3d 111, 115 (4th Cir. 1995) (quoting *Ardis v. Cox*, 431 S.E.2d 267, 270 (S.C. Ct. App. 1993)); *see also Gordon v. Fid. & Cas. Co. of N.Y.*, 120 S.E.2d 509, 515 (S.C. 1961) (stating same).

18

As to her section 1983 supervisory liability claim, Jane Doe-2 alleges that Lott and Ewing fraudulently concealed their knowledge that Bradley had engaged in conduct that posed a risk of injury to Jane Doe-2.[6] As to her negligent supervision state law claim, Jane Doe-2 alleges that RCSD fraudulently concealed that it knew or had reason to know of the necessity and opportunity to prevent Bradley's harm to Jane Doe-2.[7] Jane Doe-2 presents the below facts as evidence of Appellees' concealment:

- "Ewing intentionally 'skipped the chain of command' in reporting Bradley's meeting with Jane Doe-2 behind Target. He went directly to Sheriff Lott because of 'the sensitivity of the issue and the fact that very little people needed to know about this (because it could hurt the investigation).' The basis for hiding this information from others within RCSD was that, if this information 'got out around the RCSD, everyone would be talking about it.'"

- "RCSD intentionally did not conduct an official investigation, whereas Sheriff Lott testified there was no reason not to report the incident to the Office of Internal Affairs for investigation."

- "Appellees interviewed Jane Doe-2, a minor, during school hours without a parent or legal guardian present, and never notified her parents of the interview or that she met Bradley behind the Target store."

---

[6] As noted above, under a theory of supervisory liability, a supervisor is liable where (1) the supervisor was actually or constructively aware of a risk of constitutional injury; (2) the supervisor was deliberately indifferent to that risk; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw*, 13 F.3d at 799.

[7] Under a theory of negligent supervision, an employer may be liable where "(1) his employee intentionally harms another when he is on the employer's premises, is on premises he is privileged to enter only as employee, or is using the employer's chattel; (2) the employer knows or has reason to know he has the ability to control the employee; and (3) the employer knows or has reason to know of the necessity and opportunity to exercise such control." *Doe v. Bishop of Charleston*, 407 S.C. 128, 139 (2014).

- "[Ewing] never told Jane Doe-2 that RCSD officers saw her meet Bradley at Target. . . . Appellees never told Jane Doe-2 about Bradley's history of inappropriate conduct with minor female students."

Appellant's Op. Br. at 20–21 (brackets omitted). Even considered in the light most favorable to Jane Doe-2, this evidence does not show that Appellees committed "affirmative acts of concealment" to hide their knowledge that Bradley posed a risk of harming Jane Doe-2 or causing her constitutional injury. *Edmonson*, 922 F.3d at 553; *see supra* notes 6–7. As the district court correctly found, "[s]uch evidence . . . while perhaps indicative of negligence, fails to amount to a showing of fraudulent concealment." J.A. 538. While Appellees remained silent as to Bradley's history, they did not affirmatively conceal their knowledge from Jane Doe-2 or misrepresent information to her either. *See Lawson*, 193 S.E.2d at 126; *Robertson v. Sea Pines Real Est. Cos.*, 679 F.3d 278, 291 n.2 (4th Cir. 2012) (finding that the district court "properly concluded that plaintiffs failed to 'allege affirmative acts of concealment' or affirmative steps to mislead and that 'plaintiffs' allegations amount to no more than a failure to admit to wrongdoing, which does not suffice'" (quoting *Boland v. Consol. Multiple Listing Serv., Inc.*, 868 F. Supp. 2d 506, 517–18 (D.S.C. 2011))). Moreover, Jane Doe-2 does not allege that Appellees owed her a duty to disclose their knowledge, nor does she contend that the Court should infer a relationship of trust and confidence from this particular transaction that would mandate such disclosure. *See Cheney Bros.*, 47 F.3d at 115. Thus, the Court finds that this evidence does not create a genuine issue of material fact as to whether Appellees committed affirmative acts to conceal their knowledge of Bradley's conduct.

20

Jane Doe-2 also contends the following conduct, related to the Jane Doe-1 litigation, constitutes further evidence of Appellees' fraudulent concealment:

- "After Appellees learned of allegations that Bradley also sexually assaulted Jane Doe, they refused to timely produce Bradley's personnel file in compliance with FOIA."

- "On July 30, 2019, Sheriff Lott testified in a deposition in Jane Doe's action that Bradley's 'done a good job as a school resource officer' who exercised appropriate judgment to safely interact with teenage girls. . . . In November 2019, . . . Sheriff Lott made a statement to the press during which he called Bradley 'a sexual predator' and 'a monster that worked among us' that Appellees 'did not know about.'"

Appellant's Op. Br. at 21–22. Neither of these acts prevented Jane Doe-2 from bringing her action against Appellees within the limitations periods. *Edmonson*, 922 F.3d at 549. Jane Doe-1's FOIA request seeking Bradley's personnel file and complaints against Bradley, among other documents, was submitted on May 22, 2018; RCSD produced Bradley's personnel file, internal affairs file, videotaped interviews, and other documents on September 11, 2018; and a court ordered RCSD to produce additional relevant documents on January 25, 2019. J.A. 455–59. However, the Court does not find that RCSD's failure to comply with the production deadlines for Jane Doe-1's FOIA request amounts to an "affirmative act of concealment . . . intended to exclude suspicion and prevent inquiry" into Jane Doe-2's potential claims. *Edmonson*, 922 F.3d at 553. Jane Doe-2 also points to Lott's July 30, 2019 deposition testimony in the Jane Doe-1 case that Bradley had "done a good job as a school resource officer" as inconsistent with his statement a few months later in November 2019 that Bradley was "a sexual predator" and "a monster." J.A. 324, 389. Lott's statement, however, occurred *after* the statutes of

21

limitations for Jane Doe-2's claims had already expired. On this basis alone, Lott's statement could not constitute an affirmative act to conceal facts forming the basis of Jane Doe-2's claims.

Thus, Jane Doe-2 fails to present evidence establishing there is a genuine dispute of material fact as to whether Appellees committed affirmative acts to conceal their knowledge of Bradley's history to exclude Jane Doe-2's suspicion and prevent inquiry into Appellees' conduct. Accordingly, there is no need to address the remaining elements of the fraudulent concealment tolling doctrine. The Court affirms the district court's grant of summary judgment in favor of Appellees on the issue of fraudulent concealment.

## C.

Lastly, the Court turns to the issue of whether the limitations periods for Jane Doe-2's claims should be equitably tolled. On appeal, Jane Doe-2 contends that she is entitled to "equitable tolling" because Appellees' "fraudulent concealment" was the "extraordinary circumstance" that stood in her way and prevented timely filing.

The doctrine of equitable tolling "focuses on whether there was excusable delay by the plaintiff." *Edmonson*, 922 F.3d at 549 (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)). "Equitable tolling is appropriate 'in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* at 549 (quoting *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (en banc)). "Critically, however, equitable tolling 'differs from [fraudulent concealment and equitable estoppel] in that it does not assume a wrongful—or any—effort by the defendant to prevent

22

the plaintiff from suing.'" *Id.* (alteration in original) (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). "[A] plaintiff seeking relief from a limitations period based on 'equitable tolling' must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *Id.* at 548 (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)).

As an initial matter, Jane Doe-2 argues that the district court failed to consider her equitable tolling argument separately and conflated the "fraudulent concealment" and "equitable tolling" analysis. While the district court did not address the issues of fraudulent concealment and equitable tolling separately, we note that Jane Doe-2 did not make separate fraudulent concealment and equitable tolling arguments before the district court.[8] We find that Jane Doe-2 relies on a single theory as to why she is entitled, as a matter of equity, to tolling of the limitations periods. As such, the district court's focus on the fraudulent concealment doctrine is not a basis for remand or reversal.

According to Jane Doe-2, the "extraordinary circumstance" that stood in her way and prevented timely filing was Appellees' fraudulent concealment. As discussed in the previous section, Jane Doe-2 fails to present evidence establishing there is a genuine dispute of material fact as to whether Appellees fraudulently concealed their knowledge of Bradley's history, and thus, her allegation that Appellees' fraudulent concealment created

---

[8] The district court construed Jane Doe-2's "brief[]" discussion of "deliberate concealment" as a basis for tolling the limitations period as an argument for tolling on the basis of fraudulent concealment. *See* J.A. 537 (citing J.A. 228).

23

an "extraordinary circumstance" is unavailing. Accordingly, Jane Doe-2's fraudulent concealment allegations fail as a basis for equitable tolling. As Jane Doe-2 does not allege any additional bases on which equitable tolling may be granted, the Court finds that Appellees are entitled to summary judgment on the issue of equitable tolling.

## IV.

For the reasons set forth in this opinion, the Court affirms the district court's order granting summary judgment to Appellees and dismissing this action.

*AFFIRMED*

24